[No. C001210. Third Dist. Aug. 1, 1988.]

TAMI LYNN ABRAUGH, Petitioner, v.
ROXANI GILLESPIE, as Insurance Commissioner, etc., Respondent;
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Real
Party in Interest.

**COUNSEL**

Robert T. Durbrow, Jr., for Petitioner.

John K. Van de Kamp, Attorney General, Robert F. Tyler and Edward P. Hollingshead, Deputy Attorneys General, for Respondent.

Clausen, Harris & Campbell, Clausen & Campbell, Marie D. Clause and Frederick G. Hall for Real Party in Interest.

**OPINION**

**CARR, J.**—In this appeal we determine that excusable neglect is not a basis for relief from the late filing of a claim against an insolvent insurer pursuant

to Insurance Code section 1021[1] and that section 473, Code of Civil Procedure is not applicable to such claims.

Petitioner Tami Lynn Abraugh appeals from an order of the superior court denying mandate to compel the Insurance Commissioner (the Commissioner), as liquidator of Cal-Farm Insurance Company (Cal-Farm), to permit the late filing of her claim for injuries sustained in an automobile accident. She contends the trial court erred in concluding it lacked jurisdiction to order the filing of a late claim.

We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are essentially undisputed. Abraugh was injured while riding as a passenger in a car driven by Brian Muller. She filed a claim against Muller and Cal-Farm, Muller's insurer.[2] In March 1985, the Sacramento County Superior Court determined Cal-Farm was insolvent and appointed the Commissioner as conservator. In December 1985, the court authorized the Commissioner to liquidate the company.

In January 1986, Cal-Farm notified Abraugh's counsel, Robert Durbrow, that the Commissioner had been appointed conservator and, pursuant to sections 1021 and 1024,[3] any claims had to be submitted within six months. Attached to the letter were two claim forms and a notice from the Commissioner advising that any claims against the insurer had to be filed by July 15, 1986, as a prerequisite to obtaining benefits from real party in interest California Insurance Guarantee Association (CIGA), which insures against loss arising from the failure of an insolvent insurer to discharge its obligations.

Durbrow forwarded the claim forms to Abraugh, who completed the forms and returned them to Durbrow around March 21, 1986. However, instead of mailing the forms to Cal-Farm, Durbrow placed them in Abraugh's file and returned the file to the filing cabinet.

---

[1] All statutory references are to the Insurance Code unless otherwise specified.

[2] Cal-Farm was renamed C-F Insurance Company while in conservatorship.

[3] Section 1021, subdivision (a) provides: "Upon the making of an order to liquidate the business of such person, the commissioner shall cause to be published notice to its policyholders, creditors, shareholders, and all other persons interested in its assets. Such notice shall require claimants to file their claims with the commissioner, together with proper proofs thereof, within six months after the date of first publication of such notice, in the manner specified in this article."

Section 1024 provides, in pertinent part: "Unless such claim is filed in the manner and within the time provided in section 1021, it shall not be entitled to filing or allowance, and no action may be maintained thereon."

Durbrow discovered the error on September 23, 1986, after Abraugh called to inquire about her claim. He immediately sent the claim forms to Cal-Farm with a letter explaining the error, and asserting the misfiling occurred because he lacked secretarial help.

In a letter dated November 25, 1986, the Commissioner notified Durbrow that Abraugh's claim was rejected as it was untimely. The letter cited section 1032 in full, apprising Abraugh of her right to seek review of the Commissioner's denial of the claim within 30 days. Section 1032 provides: "When a claim is rejected by the commissioner, written notice of rejection shall be given by mail, addressed to the claimant at the address set forth in his claim. Within 30 days after the mailing of the notice, the claimant may apply to the court in which the liquidation proceeding is pending for an order to show cause why the claim should not be allowed."

Durbrow filed in superior court an application for an order to show cause (OSC) why Abraugh's claim should not be allowed. In supporting papers, Durbrow admitted he had received notice in January 1986 regarding the July 15 claim deadline, but he asserted the court should set aside the prior "default" pursuant to Code of Civil Procedure section 473 for his excusable neglect. The application for the OSC is marked by the county clerk's office, "Received December 29, 1986" and "Filed January 2, 1987."

The Commissioner and CIGA opposed the OSC, asserting: (1) the court had no jurisdiction to consider the late claim petition as the application for the OSC was filed more than 30 days after November 25, 1986, the date of the letter apprising Durbrow of the section 1032 procedure; (2) the trial court had no jurisdiction to allow the filing of a late claim after expiration of the six-month statutory period mandated by section 1021 and (3) Code of Civil Procedure section 473 was inapplicable to insurance proceedings and that, in any event, Durbrow's dilatory conduct did not constitute excusable neglect.

Durbrow submitted a supplemental declaration to support the application, in which he asserted Federal Express delivered the OSC papers to the court on December 24, 1986, but that the OSC was not filed until January 2, 1987, due to court mishandling. Durbrow stated he was attempting to obtain a copy of the Federal Express delivery receipt to prove the OSC application was timely.

A hearing on the application was conducted on January 26, 1987. In an attempt to show the OSC application was timely, Durbrow apparently

submitted a copy of the Federal Express delivery sheet which was initialed "by an M. or an N. Thorpe in the Clerk's office on December 24."[4]

However, the trial court determined it would not decide whether the OSC motion was timely filed. After reviewing the application, the court concluded that, even assuming the OSC application was timely, the court was precluded from allowing the filing of a late claim pursuant to the ruling in *Kinder* v. *Pacific Public Carriers Co-op, Inc.* (1980) 105 Cal.App.3d 657 [164 Cal.Rptr. 567]. The court stated: "I appreciate that you have submitted evidence purporting to show that you, in effect, filed the application in a timely manner and I appreciate that the opposition party disputes that fact, but as I say, I do not squarely reach that issue because it seems to me in any case that under the *Kinder* case, there is an insufficient showing here to warrant leave of the court to file late claims. . . . [T]he square ruling of the *Kinder* case is that the time limit of [sections 1021 and 1024] is mandatory, and that the court does not have discretion to allow one to file a late claim, . . . [Section] 1032 allows the court to order the Commissioner to accept a claim that the Commissioner has rejected, but there is no reason to believe that the power that the court has under 1032 refers to late claims. . . ." This appeal followed.

DISCUSSION

I

Abraugh contends the court erred in finding it had no jurisdiction to allow the filing of the late claim. She argues the provisions for review of a rejected claim set out in section 1032 imply the court has jurisdiction pursuant to Code of Civil Procedure section 473 to grant relief for the late filing of her claim because of excusable neglect. Abraugh further asserts her application for an OSC was timely.

The Commissioner and CIGA reiterate their arguments that the court had no jurisdiction to review the claim as the OSC application was untimely and that, alternatively, the court had no discretion to authorize the filing of a late claim. At oral argument, counsel for CIGA asserted section 1032 authorizes review of the Commissioner's discretionary decisions only and the Commissioner had no discretion under section 1024 to accept the late claim. This decision is therefore not reviewable.

Preliminarily, we observe that the better procedure for the trial court would have been to determine if the application for the OSC was timely

---

[4]This delivery sheet referred to by the parties as Exhibit G is not a part of the record on appeal.

filed for determination of this issue could have ended the litigation. However, it is unnecessary to remand to the trial court for determination of this issue as we conclude as a matter of law that under the facts of this case, the trial court was not empowered to grant relief from the initial late filing of the claim with the Commissioner. ■ Absent a showing that the required statutory notice was not received or that the conduct of the Commissioner or office was in some manner or wise responsible for the late filing of the claim, section 1032 does not authorize a court to grant relief from sections 1021 and 1024.

■ The review procedure provided in section 1032 is designed to permit the trial court to reexamine claims rejected by the Commissioner in the exercise of his or her discretion to determine if that rejection was proper. As noted in *Kinder, supra,* 105 Cal.App.3d 657, the provisions of section 1024 prohibit the Commissioner from accepting a claim filed more than six months after receipt of notice of the statutory period, thereby removing from the Commissioner any discretion to accept a late claim. In *Kinder,* a woman who had been assaulted by a taxi driver filed an unliquidated liability claim with the Commissioner over seven months after the date for filing claims had expired. The claim was disallowed by the Commissioner because of the late filing. The trial court denied the woman's motion for an OSC pursuant to section 1032 to permit the filing and allowance of the claim. In affirming, the *Kinder* court held the language of section 1021, subdivision (a) and section 1024 was mandatory and that the court had no authority to make exception to allow the filing of a late claim. (*Id.,* at p. 661.)[5]

---

[5] We note the court in *Kinder* misconstrues the holding in *Carpenter* v. *Eureka Casualty Co.* (1936) 14 Cal.App.2d 533 [58 P.2d 682]. In *Carpenter,* a minor, through a guardian ad litem, recovered a judgment for damages against two defendants, McDonald and Mulconery. Defendants appealed and a stay bond was posted. At the time of the accident involved, McDonald was insured by a public liability policy issued by Eureka Casualty Company (Eureka). While the appeal was pending, the bonding company became insolvent and the bond became insufficient. The judgment was affirmed on appeal; however, it was not satisfied. In the meantime, Eureka became insolvent and the Commissioner was named liquidator. Although the Commissioner published notice to creditors of the filing deadline of August 21, 1933, the minor was not apprised of the liquidation until December 12, 1934, at which time he filed a claim for the unsatisfied judgment. The claim was disallowed as untimely. He then filed a motion for an OSC to permit the late filing of the claim. The OSC was filed 10 days beyond the time allotted in the section analogous to current section 1032. The court refused to order the Commissioner to permit the filing of the claim. It stated: "Conceding that because of the peculiar facts of this case there may be a real question as to whether [the minor] filed his claim with the liquidator late because of the uncertainty as to when the claim against the casualty company actually accrued, *there can be no doubt that [the minor] was ten days late in presenting his claim 'by way of order to show cause, . . .' after he had personal notice of the rejection thereof by the liquidator. The requirement of the statute in this respect was not complied with and it is mandatory and absolute.*" (Italics added, *id.,* at pp. 536-537.)

The court in *Carpenter* refused to permit review of the rejected claim not because the claim was late but because the minor failed to comply with the requirements which authorized

■■■ However, we do not read *Kinder* as authority that a trial court never has jurisdiction to extend the claims filing period. We note a claimant may secure authorization after a section 1032 hearing to file a late claim if there has been some action by the Commissioner which induces the claimant to delay filing a claim, or when the claimant demonstrates he or she has not received notice of the claims filing period. (See e.g., *Middleton* v. *Imperial Ins. Co.* (1983) 34 Cal.3d 134 [193 Cal.Rptr. 144, 666 P.2d 1]; *Bunner* v. *Imperial Ins. Co.* (1986) 181 Cal.App.3d 14 [225 Cal.Rptr. 912].) In such situations, the Commissioner is estopped from asserting the statutory limitations period. To the extent that *Kinder* implies that a trial court lacks jurisdiction under all circumstances to grant relief from a late filing it is wrong.

In the present case, however, Abraugh made no showing she failed to receive notice or that the Commissioner otherwise induced her to postpone submitting her claim. Under these facts, the court correctly determined it had no jurisdiction to extend the claims filing period.

Moreover, we find "excusable neglect" is not a reason for permitting the filing of a late claim pursuant to section 1032. Code of Civil Procedure section 473 is located in title 6 of part 2 of that code, which is entitled "Pleadings in Civil Actions." The statute is intended to authorize a court to set aside various court orders when a civil litigant demonstrates he or she failed to comply with certain procedural requirements due to mistake, inadvertence, surprise or excusable neglect. A claim against the Commissioner to recover from CIGA payment for losses which were not discharged by an insolvent insurer is not a civil action but rather a special proceeding governed by the comprehensive statutory scheme set out in the Insurance Code. In the absence of statutory directive to the contrary, the provisions relating to pleadings in civil actions are inapplicable.[6] The theory for relief upon which Abraugh relies is not applicable in this insurance proceeding.

---

jurisdiction for review. *Carpenter* is not authority that a court never has the power to order the Commissioner to permit the filing of a late claim.

[6] At oral argument, counsel for Abraugh cited *Bunner* v. *Imperial Insurance Co., supra*, 181 Cal.App.3d 14 and *Carpenter* v. *Coast Surety Corp.* (1938) 25 Cal.App.2d 209 [77 P.2d 294] to support his argument that provisions from the Code of Civil Procedure apply in insurance proceedings. Counsel's reliance on these cases is misplaced. In *Bunner,* the Supreme Court held the Commissioner's compliance with the mailing requirements relating to notice set out in section 1063.7 created only a rebuttable presumption that notice was received, which was overcome by the claimant's testimony of nonreceipt. (*Bunner* v. *Imperial Ins. Co., supra*, 181 Cal.App.3d 14.) In so finding, the court examined former Code of Civil Procedure section 1963, which declared the presumption " ' "that a letter duly directed and mailed was received in the regular course of the mail." ' " (*Id.,* at p. 23.) In *Carpenter,* an appellate court utilized provisions of Code of Civil Procedure section 1859, relating to inconsistent statutory provisions, to find a specific exception set out in section 1025 concerning unliquidated claims prevailed over the general provision of section 1019 fixing the rights of creditors as of the date

DISPOSITION

The order is affirmed.

Puglia, P. J., and Blease, J., concurred.

---

of entry of the order directing liquidation of an insurance company. (*Carpenter* v. *Coast Surety Corp.*, *supra*, 25 Cal.App.2d at p. 212.) In both cases, the sections from the Code of Civil Procedure are found within title 2, entitled "Kinds and Degrees of Evidence," of part 4 of the code, which is designated "Miscellaneous Provisions." These provisions are *not* a part of those sections specifically directed at pleadings in civil actions as is Code of Civil Procedure section 473.